1
2
3
4
5
6
7
8                     **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11   LUCY WHITE,                    )        NO. CV 06-03045 SS
                                     )
12              Plaintiff,           )
                                     )
13          v.                       )        **MEMORANDUM DECISION AND ORDER**
                                     )
14   MICHAEL J. ASTRUE,              )
     Commissioner of the Social      )
15   Security Administration,        )
                                     )
16              Defendant.           )
     _____ )

17

18                          **INTRODUCTION**

19

20       Plaintiff Lucy White ("Plaintiff") is seeking to overturn the

21   decision of the Commissioner of the Social Security Administration[1]

22   (hereinafter the "Commissioner" or the "Agency") denying her

23   application for Disability Insurance Benefits.  Alternatively, she

24   asks for a remand.  The parties have consented, pursuant to 28

25

26       [1] Michael J. Astrue has become the Commissioner of Social
     Security Administration.  Pursuant to Rule 25(d)(1) of the Federal
27   Rules of Civil Procedure, he is substituted for Commissioner Jo
     Anne B. Barnhart as the defendant in this suit.  F.R.C.P. 25(d)(1).
28   The instant action survives "notwithstanding any change in the
     person occupying the office of Commissioner of Social Security[.]"
     42 U.S.C. § 405(g).

U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.   Pursuant to the Court's Case Management Order, the parties filed a joint stipulation ("Jt. Stip.") on April 17, 2007.   For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## PROCEDURAL HISTORY

On January 20, 2001, Plaintiff filed an application for Disability Insurance Benefits ("DIB").  (Administrative Record "AR" 45).   Plaintiff alleged that she became disabled on February 24, 1999 due to a work-related injury that caused severe back pain. (AR 64).

After Plaintiff's claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge ("ALJ").  (See AR 220).  On May 1, 2002, ALJ Samuel W. Warner held an administrative hearing.  (AR 220, 235).   Plaintiff appeared with counsel and testified.  (AR 288).  The ALJ also heard testimony from vocational expert ("VE") Marjorie Golter.  (AR 311). On July 26, 2002, the ALJ issued a decision denying benefits.  (AR 220-26).  Plaintiff sought review before the Appeals Council, which remanded the matter to the ALJ on February 28, 2003.  (AR 235-37). The Appeals Council instructed the ALJ to give further consideration to the treating source opinions, give further consideration to the claimant's maximum residual functional capacity, and obtain supplemental evidence.  (AR 236).

2

ALJ Warner held another hearing on April 28, 2003. (AR 317). Plaintiff appeared with counsel and testified. (AR 317, 320). The ALJ also heard testimony from VE Heidi Paul. (AR 334). On May 23, 2003, the ALJ issued a decision denying benefits. (AR 19-26). Plaintiff sought review before the Appeals Council, which denied her request for review on March 10, 2006, making ALJ Warner's May 23, 2003 decision the final decision of the Agency. (AR 8-10). Plaintiff filed the instant action on May 17, 2006.

**FACTUAL BACKGROUND**

Plaintiff was born on March 18, 1950, and was fifty-three years old at the time of the 2003 hearing. (<u>See</u> AR 19, 45). Plaintiff lives with her husband. (AR 307). She has a twelfth-grade education. (AR 68, 290). Plaintiff's past relevant work includes employment as a cashier and a housekeeper. (AR 65, 293).

**A.   Relevant Medical History**

Plaintiff reports that she suffered a work-related back injury in February 1999. (AR 292). After her injury, she received treatment from Dr. Yoshida which consisted of prescribing anti-inflammatory, analgesic, and muscle relaxant medication. (AR 138). Plaintiff also received physical therapy. (<u>Id.</u>). Dr. Yoshida recommended epidural injections but Plaintiff declined. (<u>Id.</u>).

In April 1999, Dr. Philip Sobol conducted an initial orthopedic evaluation. (AR 133-42). He determined that Plaintiff

had lumbar paraspinal tenderness, spasms, and limited lumbar motion. (AR 141). He diagnosed Plaintiff with lumbar musculoligamentous sprain/strain with left lower extremity radiculopathy and multilevel lumbar disc degeneration and mild bulging, per MRI study. (AR 137). He treated Plaintiff with more physical therapy and provided her with a home electrical muscle stimulation unit for symptomatic relief. (AR 138). He also prescribed anti-inflammatory medication and a muscle relaxant. (Id.). Dr. Sobol believed that it was premature to consider epidural injections. (Id.).

Dr. Sobol continued to treat Plaintiff until January 2000. (AR 108). His final report noted that Plaintiff continued to suffer from pain but that any further treatment would not lead to additional improvement. (AR 116). Dr. Sobol concluded that Plaintiff had reached maximum improvement and that she would be permanently restricted from heavy work, prolonged standing, and prolonged sitting. (AR 116-17).[2]

Medical records from MediPlus dated May 15, 2000 through August 21, 2000 indicate that the claimant was treated for low back pain, insomnia anxiety, depression, and hypertension. (AR 146-65). Plaintiff was treated with various medications. (Id.).

---

[2] The Court notes that Plaintiff filed a Worker's Compensation claim and received a $24,000 settlement. (AR 321).

On March 5, 2001, Dr. Jerrold M. Sherman conducted and Orthopedic Examination and Evaluation. (AR 166-68). Dr. Sherman concluded that "[Plaintiff's] subjective complaints are not consistent with the examination and x-rays taken today. From an orthopedic point of view, [Plaintiff] has no demonstrable restrictions regarding activities as would be appropriate for a woman her age and body habitus." (AR 168). Dr. Sherman also opined that Plaintiff is able to stand and walk for four hours in the course of an eight hour day, lift ten pounds frequently, and lift twenty pounds occasionally. (Id.).

Plaintiff provided medical records from her treating physician, Dr. Robert Washington. (AR 184-216, 268-78). Dr. Washington indicated that Plaintiff suffered from chronic pain, osteoarthritis, obesity, hypertension, an anxiety disorder, and had previously suffered a stroke. (AR 184, 274). He opined that Plaintiff had marked limitations in her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a schedule, sustain an ordinary routine without supervision, complete a normal workweek, and travel to unfamiliar places. (AR 187-89). He also reported that Plaintiff had several moderate and mild functional limitations. (Id.).

**B.   Psychiatric Evaluation**

In January 2004, Dr. Peter J. Weingold conducted a psychiatric evaluation of Plaintiff. (AR 253-54). Dr. Weingold proceeded to

treat Plaintiff on a monthly basis for nine months.  (AR 256).  He completed a Psychiatric/Psychological Impairment Questionnaire. (AR 256-63).  Dr. Weingold diagnosed Plaintiff with depression. (AR 254, 256).  Dr. Weingold found that Plaintiff had no marked functional limitations.  (AR 259-61).  He noted that Plaintiff had only moderate limitations in her ability to maintain concentration for long periods of time, perform activities within a schedule, complete a normal workweek, and interact appropriately with the public.  (AR 259-60).  Dr. Weingold opined that Plaintiff was able to tolerate low work stress.  (AR 262).

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[3]Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.

7

Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant

meets his burden of establishing an inability to perform past work,

the Commissioner must show that the claimant can perform some other

work that exists in "significant numbers" in the national economy,

taking into account the claimant's residual functional capacity

("RFC"),[4] age, education, and work experience.  Tackett, 180 F.3d

at   1098,   1100;   Reddick,   157   F.3d   at   721;   20   C.F.R.   §§

404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the

testimony of a vocational expert or by reference to the Medical-

Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel,

240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both

exertional (strength-related) and nonexertional limitations, the

Grids are inapplicable and the ALJ must take the testimony of a

vocational expert.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.

2000).

### THE ALJ'S DECISION

ALJ  Warner  employed  the  five-step  sequential  evaluation

process.  At step one, the ALJ found that Plaintiff had not engaged

in substantial gainful employment since her alleged onset date.

(AR 20).  At step two, the ALJ found that Plaintiff's chronic

hypertension and chronic low back pain are severe impairments.  (AR

---

[4]   Residual functional capacity is "what [one] can still do
despite [his] limitations" and represents an "assessment based upon
all  of  the  relevant  evidence."   20  C.F.R.  §§  404.1545(a),
416.945(a).

22).  However, the ALJ determined that Plaintiff's "mental problems
are minimal and non-severe."  (Id.).  At step three, the ALJ found
that Plaintiff's impairments, either singly or in combination, did
not meet or equal the requirements of any impairment listed at  20
C.F.R. Part 404, Subpart P, Appendix 1.  (Id.).

At step four, the ALJ held that Plaintiff had the RFC for
light work activity.  (AR 23).  He determined that Plaintiff could
lift  and  carry  twenty  pounds  occasionally  and  ten  pounds
frequently; that she can stand, sit and walk for six hours out of
an eight hour day; that she should only climb ladders, stoop or
crouch occasionally; and that she should perform only simple,
repetitive work in a low stress environment with no more than
average production and pace requirements.  (Id.).  Based upon this
assessment, the ALJ concluded that Plaintiff is unable to perform
her past relevant work as a cashier.  (Id.).  However, at step
five, the ALJ determined that Plaintiff could make "a successful
adjustment to work that exists in significant numbers in the
national economy."  (AR 24).  Accordingly, the ALJ found that
Plaintiff was not disabled.  (AR 25).

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits.  The court may set aside
the Commissioner's decision when the ALJ's findings are based on
legal error or are not supported by substantial evidence in the
record as a whole.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th

9

Cir. 2001) (citing <u>Tackett</u>, 180 F.3d at 1097); <u>Smolen v.  Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066; <u>Smolen</u>, 80 F.3d at 1279).   To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (citing <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**DISCUSSION**

Plaintiff complains that the ALJ's decision should be overturned for several reasons.  Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting the mental limitations assessed by treating physician, Dr. Robert

Washington.[5]   (Jt. Stip. at 5-8).   Plaintiff also asserts that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Washington's assessment of Plaintiff's physical limitations. (Jt. Stip. at 13-14).   Finally, Plaintiff complains that the ALJ failed to satisfy his burden at step five of the sequential analysis.   (Jt. Stip. at 18-22).   The Court disagrees with Plaintiff's contentions.

**A.   The ALJ Properly Considered The Treating Physician's Opinions**

Plaintiff complains that the ALJ did not properly consider Dr. Washington's assessments of Plaintiff's physical and mental limitations.   (Jt. Stip at 5-8, 13-14).   The Court disagrees.

Although the treating physician's opinion is entitled to great deference, it is "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).   If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923

---

[5] The Court notes that the subheading for the section that introduces the parties' arguments states that "Issue 1" is "[w]hether the ALJ provided clear and convincing reasons for rejecting the mental limitations assessed by Lucy White's treating physician, Robert Washington, M.D." (Jt. Stip. at 5).   However, both the Plaintiff and Respondent framed the issue as whether the ALJ provided specific and legitimate reasons for rejecting the treating physician's opinion.   (See Jt. Stip. at 5, 14).

F.2d 1391, 1396 (9th Cir. 1991)). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion by providing "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d at 502). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). "It is then solely the province of the ALJ to resolve the conflict." Id. When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (citing Matney).

## 1. Mental Impairments

Plaintiff argues that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Washington's assessment of Plaintiff's mental impairments. (Jt. Stip. at 5-8). The ALJ rejected Dr. Washington's assessment of Plaintiff's mental impairments because he had "few objective findings to support his

conclusions" and "the alleged mental problems were outside of his field of expertise." (AR 22). The Court concludes that the ALJ properly considered Dr. Washington's assessment of Plaintiff's mental impairments.

Dr. Washington's assessment of Plaintiff's mental impairments was conclusory and unsupported by objective medical findings. (See AR 184-200). Although Dr. Washington found that Plaintiff had several marked functional limitations due to her mental impairments, he did not indicate whether he conducted any psychological assessment or testing to reach his conclusion. (See AR 185 (noting that the only "laboratory and diagnostic test" conducted was an MRI of the spine); see also AR 198 (noting that his assessment is based on "conversations with [Plaintiff] and how she seems to handle stress/pain")). An ALJ need not accept any opinion, even a treating physician's, if that opinion is brief, conclusory, and inadequately supported by clinical findings. See Batson, 359 F.3d at 1195 (rejecting a treating physician's opinion, in part, because it was "conclusary in the form of a check list" and "lack[ed] substantive medical findings to support [the] conclusion."); Tonapetyan v. Comm'r of Soc. Sec., 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole). As such, the ALJ's finding that Dr. Washington's assessment of Plaintiff's mental impairments was unsupported by objective medical findings was a proper basis upon which to reject Dr. Washington's opinion.

13

Moreover, Dr. Washington's opinion was subsequently contradicted by the assessment of a psychiatrist, Dr. Weingold. Dr. Weingold noted that Plaintiff had no marked functional limitations and moderate limitations in her ability to maintain concentration for long periods of time, perform activities within a schedule, complete a normal workweek, and interact appropriately with the public. (AR 259-60). Greater weight should be afforded to the opinion of Dr. Weingold, a psychiatrist and an expert in mental impairments, than to the opinion of Dr. Washington, an internist. 20 C.F.R. §404.1427(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."); see also Holohan v. Massanari, 246 F.3d 1195, 1202, 1203 n.2 (9th Cir. 2001) (noting that the opinions of specialist concerning matters relating to their specialty are given greater weight than that of nonspecialist).

Even if the ALJ had erred in considering Dr. Washington's assessment of Plaintiff's mental impairments, any error was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability); Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984) (same). Dr. Washington's opinion was based solely on the complaints relayed by Plaintiff. (See AR 184, 198). The ALJ found that Plaintiff exaggerated her limitations and found that her testimony could not be fully credited. (AR 22). As such, any assessment based solely on her subjective complaints would also not be reliable.

14

In sum, the ALJ properly rejected Dr. Washington's opinions regarding Plaintiff's mental impairments. Even if there was error, it was harmless. Accordingly, Plaintiff's claim does not warrant remand.

**2.   Physical Impairments**

Plaintiff asserts that the ALJ improperly rejected Dr. Washington's opinion regarding Plaintiff's physical impairments. (Jt. Stip. at 13). Specifically, Plaintiff complains that the ALJ rejected the Multiple Impairment Questionnaire completed by Dr. Washington. (<u>Id.</u>). The Court concludes that the ALJ's consideration of Dr. Washington's opinion regarding Plaintiff's physical impairments does not warrant remand.

Dr. Washington opined that Plaintiff's physical impairments allowed her to sit for three hours, stand or walk for one hour, occasionally lift as much as fifty pounds, and occasionally carry as much as twenty pounds. (AR 195-96). Dr. Washington's opinion is contradicted by examining physician, Dr. Sherman (<u>see</u> AR 166-68), and non-examining physician, Dr. Huskey. (<u>See</u> AR 169-76). Both Dr. Sherman and Dr. Huskey found that Plaintiff can lift ten pounds frequently and twenty pounds occasionally. (AR 168, 170). Dr. Sherman determined that Plaintiff could stand and walk for four hours of an eight-hour day. (AR 168). Dr. Huskey assessed that Plaintiff could stand and walk for six hours of an eight-hour day. (AR 170). Both Dr. Sherman and Dr. Huskey believed that Plaintiff's pain complaints were not consistent with objective

medical findings. (AR 168, 174). As Dr. Washington's opinion was contradicted by examining and non-examining physicians, the ALJ need only provide specific and legitimate reasons for rejecting Dr. Washington's opinion. <u>Lester</u>, 81 F.3d at 830 (citation omitted).

The ALJ rejected Dr. Washington's Multiple Impairment Questionnaire because it was not supported by objective findings or testing. (AR 23). The only objective testing Dr. Washington conducted was an MRI which revealed disc degeneration[6] in the lumbar spine. (<u>See</u> AR 183A, 194). However, the MRI did not reveal any stenosis[7] or nerve root compression.[8] (AR 183A). As such, the ALJ reasoned that the objective findings from the MRI were not consistent with Dr. Washington's assessment of Plaintiff's physical functional limitations.

\\

Even if the ALJ erred in rejecting Dr. Washington's opinion regarding Plaintiff's physical functional limitations, any error

---

[6] Degenerative disc disease is not really a disease but a term used to describe the normal changes in your spinal discs as you age. <u>WebMd</u>, Degenerative Disc Disease - Topic Overview, http://webmd.com/back-pain,tc/Degenerative-Disc-Disease-Topic-Overview.

[7] Stenosis is the narrowing of spaces in the spine which causes pressure on the spinal cord and/or nerves. <u>WebMd</u>, Back Pain Guide, http://www.webmd.com/back-pain/guide/spinal-stenosis.

[8] Nerve roots are nerves that branch off the spinal cord and are responsible for sending signals to and from the muscles and other structures throughout the body. Compression or inflamation of the nerve roots can cause symptoms of pain, altered reflexes, decreased strength, and decreased sensation. <u>WebMd</u>, Cauda Equina Syndrome, http://www.webmd.com/a-to-z-guides/cauda-equina-syndrome.

was harmless.  See Curry, 925 F.2d at 1129; Booz, 734 F.2d at 1380-81.   Substantial  evidence  in  the  records  support's  the  ALJ's assessment  of  Plaintiff's  physical  functional  limitations.    Dr. Sherman and Dr. Huskey made very similar determinations regarding Plaintiff's exertional limitations.  (See AR 168, 170).  They both found that Plaintiff could lift ten pounds frequently and twenty pounds occasionally.  (AR 168, 170).  They differed only slightly about the amount of time that Plaintiff could stand and walk in an eight-hour  work  day.     (AR  168  (Dr.  Sherman  determined  that Plaintiff  could  stand  and  walk  for  four  hours  of  an  eight-hour day); AR 170 (Dr. Huskey assessed that Plaintiff could stand and walk for six hours of an eight-hour day)).  Moreover, Dr. Sherman's assessment was based on objective medical findings.  As such, the ALJ's RFC assessment is supported by substantial evidence in the record.  Andrews, 53 F.3d at 1041 (noting that when the opinion of a nontreating source is based on independent clinical findings, the opinion  of  the  nontreating  source  may  itself  be  substantial evidence).

Moreover,  the  ALJ  determined  that  Plaintiff's  testimony regarding her symptoms and limitations could not be fully credited. (AR 22).  As it appears that Dr. Washington's assessment was based largely on Plaintiff's subjective complaints, his opinion is not reliable.

Further, Dr. Washington's assessment is extremely conservative on  one  aspect  of  Plaintiff's  physical  limitations  and  extremely optimistic on another.  Dr. Washington determined that Plaintiff

17

can lift up to fifty pounds and occasionally carry twenty pounds. (AR 196).  This far exceeds the weight restrictions recommended by Drs. Sherman and Huskey.  (See AR 168, 170).  On the other hand, Dr. Washington's opinion that Plaintiff could only sit for three hours and stand and walk for one hour (AR 195), is far more conservative that the opinions of Drs. Sherman and Huskey.  (See AR 168, 170).  As such, Dr. Washington's assessment of Plaintiff's physical limitations appears to be internally inconsistent.

In sum, the ALJ gave a specific and legitimate reason for rejecting Dr. Washington's assessment of Plaintiff's physical functional limitations.  To the extent that the ALJ may have erred, the error was harmless.  Plaintiff is therefore not entitled to remand on this claim.

**B.  <u>The ALJ Satisfied His Burden At Step Five Of The Five-Step Sequential Evaluation Process</u>**

Plaintiff complains that VE Heidi Paul erroneously determined that Plaintiff could perform the jobs of "dog bather" and "stitcher."  (Jt. Stip. at 19).  Plaintiff's claim is without merit.

The ALJ found that Plaintiff had the RFC for light work activity.  (AR 23).  He determined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; that she can stand, sit and walk for six hours out of an eight hour day; that she should only climb ladders, stoop or crouch occasionally;

and that she should perform only simple, repetitive work in a low stress environment with no more than average production and pace requirements. (Id.). The ALJ properly summarized and included all of Plaintiff's exertional and non-exertional limitations in her hypothetical to the vocational expert. (See AR 337-38).

Plaintiff contends that the VE's identification of the dog bather and stitcher positions were inappropriate for Plaintiff. She argues that the General Educational Development ("GED") specifications of these positions in the Dictionary of Occupational Titles ("DOT") describes work that is not limited to simple instructions. (Jt. Stip. at 19). However, Plaintiff misinterpreted the RFC assessed by the ALJ. The ALJ limited Plaintiff to "simple, repetitive work," not work involving simple "instructions." (See AR 23).

Moreover, the DOT describes the GED for a dog bather and a stitcher to be Level Three and Two respectively. DOT No. 690.685-494; DOT No. 418.677-010. Level Two requires that an employee apply "a commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, Appendix C, Components of the Definition Trailer. Level Three requires the application of "a commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." (Id.). As such, the DOT's description of each position does not indicate that the work involves complex instructions.

Plaintiff argues, tangentially, that the ALJ did not establish that a significant number of jobs that someone with Plaintiff's RFC could perform exist in the national and regional economy. (Jt. Stip. at 21). The VE testified that in the occupations of dog bather and stitcher, there were 476 jobs that existed in the local economy and 24,700 jobs in the national economy that Plaintiff could perform. (See AR 24, 338).[9] This number is large enough to support a finding that jobs for which Plaintiff is qualified exist in significant numbers. See Barker v. Sec'y of Health and Human Servs., 882 F.2d 1474, 1478-79 (9th Cir. 1989)(citing with approval decisions finding several hundred jobs "significant") (citations omitted).

In sum, Plaintiff misconstrued the ALJ's RFC assessment. Plaintiff did not establish that there was a discrepancy between the ALJ's assessment of Plaintiff's RFC and the DOT's description of the jobs Plaintiff could perform. Further, the Commissioner met its burden of establishing that jobs exist in the national and regional economy that someone with Plaintiff's RFC could perform. Accordingly, Plaintiff's claim does not warrant remand.

\\

\\

**CONCLUSION**

---

[9] The Court notes that the VE also testified that Plaintiff could work as a small product assembler and an inspector of electrical equipment. (AR 24, 339-44)

20

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 3, 2007

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE